## 2229. JOHNSTON *v.* THE STATE.

To obtain sanction of a writ of certiorari, one who is unable to give bond and security for his appearance to abide the final order, judgment, or sentence of the court must, in order to obtain a supersedeas, make affidavit, as a part of his petition, stating that from his poverty he is unable to give such bond. Failing to make such an affidavit, the petitioner is not entitled to have his petition sanctioned; or if it be sanctioned, it should be dismissed upon motion.

Certiorari; from Liberty superior court—Judge Seabrook. September 22, 1909.

Submitted November 30,—Decided December 24, 1909.

*Donald Fraser,* for plaintiff in error.

*N. J. Norman, solicitor,* contra.

Russell, J. The judge of the superior court dismissed a certiorari by which it was sought to review a judgment of the county court of Liberty county, finding a defendant guilty of a misdemeanor. The question raised by the record was the sufficiency of the affidavit upon which the petitioner's right to certiorari was based. The petitioner for certiorari attached to his petition, upon its presentation to the judge of the superior court for sanction, the following affidavit: "Georgia, Liberty County. Freeman Johnston vs. The State. Certiorari. Opprobrious words and abusive language. Personally comes Freeman Johnston, the plaintiff in certiorari in the above-stated case, and on oath says that he is dissatisfied with the judgment in said case; that he has not had a fair trial, and has been wrongfully and illegally convicted; that he is advised by his counsel and verily believes he has good cause for certiorari; that said petition for certiorari is not filed in the case for the purpose of delay only, and that the facts stated in said petition are true. He further swears that, owing to his poverty, he is unable to pay the costs in said case. Freeman Johnson." There is no question that this affidavit complied with the requirements of §765 of the Penal Code, in so far as compliance would be necessary, if the defendant had been able to give a supersedeas bond, as the affiant also swears that, owing to his poverty, he is unable to pay the costs. The only question, therefore, is, whether the affidavit is insufficient in that the petitioner does not swear that, owing to his poverty, he is unable to give the bond required by law.

So far as the writer is concerned, it is his personal opinion that

the affidavit should be sufficient for the purpose of obtaining a writ of certiorari and a consideration of the merits of the petition, although, in the absence of an averment that the petitioner is unable to give bond, the certiorari would not operate as a supersedeas. Of course, this view is based upon the fact that this affidavit was made prior to the act of 1909, and consequently is not affected by it. Section 765 of the Penal Code provides that the writ shall not be granted unless the applicant, in addition to swearing that he has not had a fair trial, etc., "shall also give bond and security, or make affidavit as is required of persons when carrying cases to the Supreme Court." The only affidavit required in carrying criminal cases to the Supreme Court is the pauper affidavit to relieve counsel from liability for costs, in which the plaintiff in error is required to swear that, because of his poverty, he is unable to pay the costs in the case stated. Prior to the act of 1909, to which reference has been made, the filing of this affidavit would not operate as a supersedeas in all cases, although it would in cases not bailable. In bailable cases, for the writ of error to operate *as a supersedeas,* it is necessary for the plaintiff in error to make an affidavit that he is unable, from his poverty, to give bond for his personal appearance to abide the final judgment of the court. And section 1077 provides that if he is unable to give the recognizance, a supersedeas shall be ordered, upon the filing of an affidavit as provided in civil cases, which, of course, is an affidavit that he is unable to give bond for the eventual condemnation money. In my opinion, to require an affidavit that the defendant is unable to give bond, when, as a matter of fact, he might not desire a supersedeas, which would require him, prior to the passage of the act of 1909, to lie in jail, is to deprive such a defendant of the right of choice to which one who was able to give bond would be entitled. From no standpoint, however, are the views of the writer important to any other than himself; for the reason that the Supreme Court, in the case of *Brown* v. *State,* 124 *Ga.* 411 (52 S. E. 745), has, in the opinion of his colleagues, decided that there must be an affidavit that the applicant for certiorari is unable, from his poverty, to give a bond conditioned for his personal appearance to abide the final judgment or sentence in the case. In my opinion, the point now before us was not before the Supreme Court in the *Brown* case; and, therefore, the reference to the subject in the opinion is mere obiter.

The question before the Supreme Court in that case was as to the character of the bond required, and no pauper affidavit was before the court. Brown had given a bond, and the only question was whether that bond was sufficient. The court was not attempting to say whether, if Brown had not given a bond, an affidavit which stated only that he was not able to pay the costs would or would not have been sufficient, because Brown had not made any affidavit. The writer's view, that no bond is absolutely required of persons carrying cases to the Supreme Court, and that the only purpose of such a bond, or of an affidavit in lieu of a bond, is to obtain a supersedeas, is distinctly recognized in the *Brown* case; for in delivering the opinion (p. 413) Chief Justice Fish says: "Strictly speaking, no bond is absolutely required of persons carrying criminal cases to the Supreme Court, yet in order to obtain a supersedeas in a bailable case, and thus prevent the sentence of the lower court from being carried into execution while the convicted person is seeking to have the judgment against him set aside by the Supreme Court, a bond is required," etc. As the affidavit in lieu of the bond is generally merely to obtain a supersedeas, and as under the very ruling in the *Brown* case the bond is not necessary, it is clear to me that in those cases where certiorari was applied for prior to the act of 1909, no affidavit other than that in regard to the costs was required, unless the supersedeas was desired. In the *Memmler* case, 75 *Ga.* 576, Justice Hall points out the ambiguity of the language employed in § 4263 of the Code of 1882, from the latter portion of which § 1077 of our present Penal Code was taken, but a reference to § 4263 of the Code of 1882 shows that that is what was meant by the pauper's oath made for the purpose of carrying a case to the Supreme Court, as referred to in § 765. The last clause of § 4263 (after the preceding clause has stated that if the party is unable, from his poverty, to give a recognizance, the judge shall order a supersedeas upon the filing of the affidavit as provided in civil cases) proceeds as follows: "If a pauper's oath is made for the purpose of carrying any case to the Supreme Court of this State without paying the costs, such oath shall state that the plaintiff in error, because of poverty, is unable to pay the costs in said case, without stating conjunctively the inability of plaintiff in error to give bond for the eventual condemnation money." We bear in mind the fact that the constitution states that the costs can not be

demanded of a defendant until after his final conviction, but this fact is not pertinent to the question before us. The only effect of such a ruling would be to set aside the pauper affidavit upon which every case is now brought to this court. It would not conflict with the terms of the requirement as to certioraries from county courts, —that such affidavit or bond is required to effect a supersedeas during the pendency of a motion for new trial in advance of the writ of error. Under the view of the majority of the court the case, however, is controlled by the ruling in the *Brown* case, supra, and consequently there was no error in dismissing the certiorari.

*Judgment affirmed.*